**UNITED STATES of America,**
**Appellee,**

v.

**Luis RODRIGUEZ, Defendant–**
**Appellant.**

**No. 02–1488(L), 03–1514(CON),**
**04–0082(CON).**

United States Court of Appeals,
Second Circuit.

Argued Sept. 22, 2004.

Decided Dec. 16, 2004.

See also 363 F.3d 187.

Jillian S. Harrington, New York City, (Barry M. Fallick, Rochman Platzer Fallick Sternheim Luca & Pearl, New York City, of counsel), for Appellant.

Scott Klugman, Assistant United States Attorney, Eastern District of New York, Brooklyn, N.Y. (Roslynn R. Mauskopf, United States Attorney for the Eastern District of New York, Susan Corkery, Assistant United States Attorney, Eastern District of New York, Brooklyn, NY, of counsel), for Appellee.

Before: MESKILL, McLAUGHLIN and B.D. PARKER, Jr., Circuit Judges.

MESKILL, Circuit Judge.

Defendant–Appellant Luis Rodriguez was convicted following a jury trial in the United States District Court for the Eastern District of New York, Ross, *J.,* of possession with intent to distribute heroin and conspiracy to distribute heroin. *See*

21 U.S.C. §§ 841, 846. Rodriguez now moves for a new trial arguing, *inter alia,* that the district court improperly admitted expert testimony offered by two law enforcement officers and that his trial counsel provided constitutionally ineffective assistance. Rodriguez principally argues, however, that his conviction should be reversed because the evidence was insufficient as a matter of law to warrant a conviction. On this score, we agree. We therefore reverse Rodriguez's conviction and remand with instructions to enter a judgment of acquittal.

## BACKGROUND

From July to December 2000, the Drug Enforcement Agency (DEA) conducted an investigation into the activities of Carlos Medina, a suspected narcotics dealer. During this six month investigation a DEA confidential informant, Enrique Ramos, personally met with and spoke by telephone to Medina on several occasions to arrange the purchase of heroin. The investigation culminated on December 13, 2000, when the DEA arranged a "buy and bust" operation at which Ramos was to purchase heroin from Medina. Ramos and Medina arranged to meet at a Boston Market restaurant to consummate the transaction. The prosecution against Rodriguez and an alleged co-conspirator, Tommy Cruz, centered on their involvement in the events surrounding that meeting.

Rodriguez and Cruz were charged in a single indictment with two counts: conspiracy to distribute a substance containing heroin in an amount of 100 grams or more and possession with intent to distribute a similar amount of heroin. They were tried jointly. At trial, the government postulated that both men knowingly and intentionally assisted in the Boston Market meeting and the attempted sale of the heroin by serving as "lookouts" for Medi-

na. That is, they allegedly protected Medina from detection by law enforcement and robbery by rival drug dealers. During the course of a two day trial the government offered the testimony of Ramos and five DEA agents. The government's evidence consisted of the following.

Before Medina met with Ramos, Rodriguez and Cruz arrived together at the Boston Market in a Lincoln Town Car. The DEA investigation had not previously targeted either individual as being involved with Medina. But, when Rodriguez and Cruz exited their vehicle and began surveying the surrounding area and stores, DEA agents began to monitor their actions. DEA surveillance also showed that Rodriguez and Cruz examined vehicles in the restaurant's parking lot, with Cruz even walking up to and peering into a DEA surveillance van. Only after doing so did they enter the Boston Market to order food. Rodriguez and Cruz then sat together, several tables from where Ramos already was seated.

Thereafter, Medina arrived at the Boston Market and sat with Ramos. In hushed voices Ramos and Medina discussed the sale of heroin, and Ramos agreed to accept 900 grams of heroin at a price of $76 per gram. After the negotiations were complete Medina left the Boston Market, promising Ramos that he would return with the drugs. Medina walked east through the restaurant's parking lot, and DEA agents observed him make a call on his cellular telephone. Soon thereafter, Rodriguez and Cruz exited the restaurant, entered the Lincoln Town Car and, as Medina had done minutes earlier, proceeded east through the parking lot.

As the agents waited for Medina to return with the heroin they saw the Lincoln Town Car carrying three unidentifiable passengers drive past both their surveillance van and the Boston Market. Approximately three minutes later, the car reappeared. This time it carried only two passengers, Cruz and Medina, and it proceeded into the parking lot. At the same time agents observed Rodriguez "suspicious[ly]" standing alone on a street corner a block from the restaurant, looking toward the restaurant's parking lot.

On seeing Medina, Ramos exited the Boston Market and approached the car; as he did so, Ramos noticed that Cruz was in the driver's seat while Medina sat alongside him in the front passenger seat. Ramos entered the back seat of the car and Medina directed him to look in a box located behind the driver's seat. Ramos opened the box and observed heroin hidden inside a plastic bag. Satisfied, Ramos informed Medina that he would retrieve cash to finalize the transaction. Instead, Ramos exited the car and gave the DEA agents a prearranged arrest signal. In response, the agents converged on the car and arrested Cruz and Medina. They also searched the car, seizing a total of 898.1 grams of heroin. Also seized from the back seat of the car was a locked briefcase that contained two weapons (an electronic taser gun and OC spray [1]) and documentation (including a hotel bill and passport) bearing Rodriguez's name. Finally, the agents seized a cellular telephone and a pager from Medina.

After his arrest Cruz professed that he did not know that Medina was selling narcotics. Instead, Cruz stated that he had been asked "to watch someone's back" and did not know precisely why Medina met with Ramos. For his part, Medina immediately began to cooperate. Rodriguez

---

1. "OC" is an abbreviation for "oleoresin capsicum." OC spray is also known as pepper spray or mace.

was apprehended three weeks later, at which time agents also seized a cellular telephone that he was carrying. A DEA agent testified that one day after his arrest, while awaiting his initial appearance before a magistrate judge, Rodriguez, apparently referencing the Lincoln Town Car and the items found within it, asked where his car and passport were being kept.

At trial the government also offered the expert testimony of two DEA agents. One of these witnesses, Special Agent Mark Tully, opined that when Cruz stated that he had arrived at the Boston Market "to watch someone's back" he used a phrase commonly understood in narcotics jargon to mean serving as a lookout for a drug deal. The government also offered the expert testimony of Agent Brian Fleming, who oversaw the investigation. He testified that drug dealers usually bring armed associates to such transactions as a means of guarding against robbery by rival drug dealers and to detect law enforcement activity.

Finally, the government offered two pieces of demonstrative evidence against Rodriguez. First, to establish that Rodriguez owned the Lincoln Town Car the government offered into evidence the taser gun, OC spray and documentation bearing Rodriguez's name, all of which were seized from the locked briefcase inside the vehicle. Second, the government offered records from the cellular telephones and pager seized when Medina and Rodriguez were arrested separately. These records showed that during the two days preceding Medina's meeting with Ramos thirteen telephone calls and four pages were placed between the two phones. The toll records also showed that on the day of the meeting six calls were placed between the seized phones, with two calls being made minutes before Rodriguez and Cruz arrived at the Boston Market. Additionally, the records indicated that a call was placed between the two phones corresponding to when agents observed Medina talking on a cellular telephone as he walked through the restaurant's parking lot after finalizing the terms of the sale with Ramos.

After Agent Fleming completed his testimony the government rested its case. Although the record before us indicates that Medina was cooperating, the government did not offer his testimony. Counsel for Rodriguez and Cruz then moved for a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure, arguing that the government had failed to demonstrate that either defendant knew that Medina engaged in a drug deal or acted with the specific intent to provide assistance to a drug transaction. Specifically, counsel for Rodriguez maintained that the government had offered only "suspicious behavior coupled with some cell phone calls" such that "[t]he government never demonstrated knowledge and intent on the part of Mr. Rodriguez as part of this conspiracy and the evidence isn't sufficient to sustain the case going to the jury." When the district court denied the motions, Rodriguez and Cruz elected not to call any witnesses to testify on their behalf. The jury subsequently convicted Rodriguez on both the conspiracy charge and the substantive possession charge. The jury acquitted Cruz of conspiracy but convicted him on the substantive charge.

Thereafter, the district court sentenced Rodriguez principally to 188 months imprisonment, to be followed by five years of supervised release. A judgment of conviction was entered on July 31, 2003, from which Rodriguez timely appealed.

## DISCUSSION

I. *Standard for Reviewing the Sufficiency of the Government's Evidence*

Rodriguez asks us to determine whether the government presented evi-

dence that proved his guilt on the charged crimes beyond a reasonable doubt. To prevail, Rodriguez "bears a heavy burden," *United States v. Aina–Marshall*, 336 F.3d 167, 171 (2d Cir.2003), as our inquiry requires us to ask only "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The "relevant question" in this inquiry is "whether, after viewing the evidence in the light most favorable to the [government], *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319, 99 S.Ct. 2781. Moreover, the absence of direct evidence establishing Rodriguez's guilt is not dispositive. *United States v. Glenn*, 312 F.3d 58, 64 (2d Cir.2002). In fact, the government is entitled to prove its case solely through circumstantial evidence, provided, of course, that the government still demonstrates each element of the charged offense beyond a reasonable doubt. *Id.* It thus remains axiomatic that, "[i]t would not satisfy the [Constitution] to have a jury determine that the defendant is *probably* guilty." *Sullivan v. Louisiana*, 508 U.S. 275, 278, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993).

II. *The Decision in* United States v. Cruz

Before addressing the merits of this case, we pause to note that we have already considered Cruz's appeal. In resolving that appeal we held that the government offered insufficient evidence from which a reasonable factfinder could have found Cruz guilty beyond a reasonable doubt. *See United States v. Cruz*, 363 F.3d 187, 199–200 (2d Cir.2004). We so held because the record, which largely tracks the evidence offered against Rodriguez, was devoid of evidence that "Cruz knew that Medina possessed drugs or that he intended to sell drugs to Ramos." *Id.*

at 198. We noted that the DEA agents' testimony that Cruz engaged in countersurveillance activity when he initially arrived at the Boston Market, that Cruz was present at the Boston Market during the meeting, and that Cruz drove the Lincoln Town Car in which Ramos first saw the heroin all indicated that "Cruz was present at the scene of the crime and likely knew that some type of crime was being committed." *Id.* at 198–99. We held, however, that the evidence fell short of establishing that "Cruz knew of the specific crime Medina proposed to commit or that Cruz intended to facilitate such a crime." *Id.* at 199. We thus held that the government offered insufficient evidence to show that, although Cruz may have served as a lookout, he possessed the requisite knowledge and specific intent to sustain his conviction. *Id.*

In addition, we also addressed Cruz's argument that Agent Tully was erroneously permitted to offer expert testimony regarding the meaning of Cruz's statement that he was present at the scene of Medina's meeting with Ramos because he had been asked "to watch someone's back." We held that the district court improperly permitted Agent Tully to offer expert testimony regarding the meaning of this phrase because the government had offered no evidence that it had a fixed meaning in drug parlance. *Id.* at 197. Nonetheless, even taking into consideration this improperly admitted testimony, we held that there existed insufficient proof to permit a reasonable jury to have found Cruz guilty. *Id.* at 200. Accordingly, we reversed Cruz's conviction and directed the district court to enter a judgment of acquittal. *Id.* at 189, 200.

III. *Sufficiency of the Evidence Against Rodriguez*

On this appeal Rodriguez argues that the decision in *Cruz* requires us to reverse

his conviction. The government argues that despite our decision in *Cruz* we may affirm Rodriguez's conviction because a separate set of facts established his guilt. Moreover, the government argues that unlike Cruz, who could have been convicted of the substantive charge only under an aiding and abetting theory, Rodriguez could have been convicted under a constructive possession theory as well. Despite the government's attempt to parse the evidence, we hold that Rodriguez's conviction must be reversed.

### A. *Rodriguez's Conviction Under an Aiding and Abetting Theory*

Mindful of the deferential standard of review through which we must consider Rodriguez's appeal, we first ask whether the government presented sufficient evidence to merit a conviction on the conspiracy and substantive charges on the grounds that Rodriguez aided and abetted a drug transaction.

■■ To prove possession with the intent to distribute, the government was required to show that Rodriguez knowingly and intentionally possessed heroin, and did so with the intent to distribute it. *See* 21 U.S.C. § 841(a); *United States v. Boonphakdee*, 40 F.3d 538, 541–42 (2d Cir.1994). And, as we stated in *Cruz*, "[a]n aiding and abetting conviction must be premised on 'more than evidence of a general cognizance of criminal activity' or 'suspicious circumstances.'" 363 F.3d at 197 (quoting *United States v. Samaria*, 239 F.3d 228, 233 (2d Cir.2001)). We observed that "[t]o prove that the defendant acted with ... specific intent, the government must show that [the defendant] knew of the proposed crime.'" *Cruz*, 363 F.3d at 198 (quoting *United States v. Labat*, 905 F.2d 18, 23 (2d Cir.1990)).

Unlike Cruz, who was convicted only of a possession charge, Rodriguez was also convicted of violating section 846 of Title 21 of the United States Code. That section provides:

> Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

21 U.S.C. § 846.

■ To sustain a conspiracy conviction, the government must present "'some evidence from which it can reasonably be inferred that the person charged with conspiracy knew of the existence of the scheme alleged in the indictment and knowingly joined and participated in it.'" *United States v. Morgan*, 385 F.3d 196, 206 (2d Cir.2004) (quoting *United States v. Gaviria*, 740 F.2d 174, 183 (2d Cir.1984)). "'Proof that the defendant knew that *some* crime would be committed is not enough.'" *Id.* (quoting *United States v. Friedman*, 300 F.3d 111, 124 (2d Cir.2002)).

■ In sum, the conspiracy and substantive charges, both of which are specific intent crimes, required the government to establish that Rodriguez knowingly and intentionally participated in the drug deal involving Medina and Ramos. *See Morgan*, 385 F.3d at 206; *Samaria*, 239 F.3d at 231, 237–38; *United States v. Pitre*, 960 F.2d 1112, 1121 (2d Cir.1992). For this reason, the government argues that it not only showed that Rodriguez served as a lookout for Medina, but also that it introduced sufficient circumstantial evidence of Rodriguez's knowledge and intent.

As an initial matter, we note that as we held in *Cruz*, the government presented sufficient evidence from which the jury could have found that Rodriguez served as a lookout. *See Cruz*, 363 F.3d at 199 ("Viewing all the evidence in the light most favorable to the government and drawing all permissible inferences in its favor, the

most the prosecution demonstrated here ... was that Cruz acted as a lookout for Medina."). For instance, the testimony that Rodriguez (along with Cruz) engaged in countersurveillance activity outside the restaurant just before Medina's meeting with Ramos, that both men remained in the restaurant for the entire meeting— leaving minutes after Medina had departed—and that Rodriguez was observed standing on a corner one block from the restaurant when Medina and Cruz met with Ramos in the Lincoln Town Car, permitted the jury to conclude that Rodriguez acted as a lookout. Nevertheless, as in *Cruz*, a critical question remains: whether the government proved beyond a reasonable doubt that Rodriguez had the knowledge and specific intent to aid and abet a *drug* transaction. *See Samaria*, 239 F.3d at 237–38 ("In conspiracy cases in which defendants acted as lookouts, we have upheld convictions only when other indicia of the elements of the underlying substantive offense have been in evidence."); *see also United States v. Dean*, 59 F.3d 1479, 1487 (5th Cir.1995) (noting that evidence establishing that defendant acted as a lookout was alone insufficient to show that he knew he was conducting countersurveillance for a drug transaction); *United States v. Wexler*, 838 F.2d 88, 91–92 (3d Cir.1988) (holding despite evidence that defendant acted as a lookout, absence of evidence linking defendant to the specific object of crime was fatal to prosecution).

On appeal, the government posits that four pieces of evidence provided indicia of Rodriguez's knowledge and specific intent. First, the government points to Rodriguez's Lincoln Town Car—the car in which Medina and Cruz were arrested and from which the drugs were seized. Although there was evidence presented that the car was registered to someone other than Rodriguez, the government offered testimony that after Rodriguez's arrest he asked a DEA agent where his car was being kept.

Moreover, the government also offered the documents bearing Rodriguez's name— which were seized from the car—to establish that the Lincoln Town Car belonged to Rodriguez. However, even assuming that the government established that the vehicle belonged to Rodriguez, this does not adequately prove that Rodriguez knew the specific nature of the deal between Medina and Ramos. *See, e.g., Samaria*, 239 F.3d at 237 (holding that although defendant transported stolen goods in his car, the evidence was not "sufficient to support the conclusion that [the defendant] knew that the goods were stolen").

Second, the government argues that it presented evidence that the heroin was seized from an area of the Lincoln Town Car in reasonable proximity to where Rodriguez had sat moments earlier. On this point the government contends that minutes before Medina returned to the Boston Market parking lot with the heroin and met with Ramos the DEA agents observed the Lincoln Town Car pass the restaurant carrying three individuals, with someone sitting in the back seat. Although surveillance did not reveal who sat where, the government argues that Rodriguez must have been the back seat passenger because Cruz drove the car when it later pulled into the parking lot, while Medina sat in the front passenger seat. However, given that the testimony at trial established that Medina left the Boston Market meeting on foot, with Rodriguez and Cruz following in the Lincoln Town Car, it would be equally plausible that Medina (the last to be picked up) sat in the back seat and moved to the front when Rodriguez exited the car. Thus, even considering the evidence in the light most favorable to the government, we cannot accept the premise of the government's argument—that Rodriguez necessarily sat in the car's back seat in proximity to the heroin. *See Friedman*, 300 F.3d at 124 (holding that "where the

Government seeks to prove a fact that is also an element of the offense by circumstantial evidence, '[w]e must ... be satisfied that the inferences are sufficiently supported to permit a rational juror to find that the element, like all elements, is established beyond a reasonable doubt' ") (quoting *United States v. Martinez*, 54 F.3d 1040, 1043 (2d Cir.1995)) (alterations in original).

Moreover, even if we were to accept the government's premise that a jury could reasonably conclude that Rodriguez sat in the back seat of the car, the government would have us conclude that the heroin was in plain view or could somehow be identified if one were sitting next to it, such that Rodriguez would have been aware of the nature of the transaction. We cannot so hold. As we explained in *Cruz*, the heroin was hidden inside a telephone box and also wrapped in two bags. *See Cruz*, 363 F.3d at 198 (stating that "the heroin was *hidden* in the back of the vehicle inside both a telephone box and a plastic bag") (emphasis added); *see also Samaria*, 239 F.3d at 237 (holding that the government did not present sufficient evidence of the defendant's intent to engage in a conspiracy to receive or possess stolen goods when defendant rode in car with boxes of stolen goods because "the exterior appearance of the boxes was equally consistent with any number of different criminal offenses including the receipt and possession of drugs, illegal weapons, counterfeit currency, or the receipt of legal goods such as drug paraphernalia that would later be employed in a criminal endeavor"). Accordingly, even were we to assume that Rodriguez sat near the heroin, this fact may not serve as circumstan-

tial evidence adequate to prove Rodriguez's knowledge and intent.

Third, the government argues that by establishing that Rodriguez brought weapons with him, it presented the jury with indicia of Rodriguez's knowledge and intent to partake in a drug deal. To advance this argument, the government points to the taser gun and OC spray that were seized from a locked briefcase inside the Lincoln Town Car. When coupled with Agent Fleming's expert testimony that it is common to recover weapons at a narcotics arrest, the government supposes that the jury could have reasonably inferred that Rodriguez brought weapons because he knew Medina would be engaging in a narcotics transaction.[2] Crediting Agent Fleming's testimony—although we note the weapons were kept in a locked briefcase when Medina met with Ramos—the government nonetheless failed to prove that Rodriguez knew the purpose of his countersurveillance was to facilitate a narcotics deal. *See, e.g., Friedman*, 300 F.3d at 126.

Finally, the government highlights the telephone calls and pages placed between Rodriguez and Medina as circumstantial evidence from which the jury could have inferred that Rodriguez knew Medina was engaged in a drug deal. Drawing all inferences in the government's favor, we conclude that from this evidence the jury reasonably could have concluded that Medina spoke to Rodriguez during these calls and that they discussed some aspects of the transaction, such as how Rodriguez and Cruz should conduct the countersurveillance or where Rodriguez and Cruz were to meet Medina after he exited the Boston Market on foot. Critically absent, however, is any evidence of the precise contents

---

**2.** Rodriguez also maintains on appeal that the admission of Agent Fleming's expert testimony was improper and prejudicial, such that he should be granted a new trial. We need not address this issue because we hold that there was insufficient evidence to support a conviction even considering this testimony.

of the conversations. *Compare Labat,* 905 F.2d at 22 (affirming a conviction for conspiracy to distribute narcotics when a defendant who served as a lookout was also overheard using coded drug language during telephone conversations), *with Wexler,* 838 F.2d at 91 (holding that although defendant who served as a lookout during sale of narcotics was in communication with the seller "at various times throughout the operation" there was "missing . . . any evidence that [the defendant] knew that [the sale involved] a controlled substance"). Accordingly, standing alone the toll records offered at trial fail to support the conclusion that Rodriguez knew why Medina met with Ramos.

For the foregoing reasons, even when the evidence is viewed cumulatively and in the light most favorable to the government, we conclude that the evidence was not sufficient to demonstrate that Rodriguez "knew the specific nature of the conspiracy or underlying crime, [such that] he has met the 'heavy burden' faced by defendants seeking to overturn a conviction on grounds that the evidence was insufficient." *Friedman,* 300 F.3d at 126.

### B. *Rodriguez's Conviction Under a Constructive Possession Theory*

■ "Having failed to provide sufficient proof of [Rodriguez's] specific knowledge and intent regarding the crimes charged through circumstantial evidence," *Samaria,* 239 F.3d at 238, the government argues that the jury could have convicted Rodriguez of the substantive charge on a constructive possession theory of liability as well. We disagree.

We first note that at trial the government did not differentiate the roles Rodriguez and Cruz played in the transaction, and on appeal in *Cruz* the government affirmatively represented that it sought to convict Cruz only on an aiding and abetting theory. *See Cruz,* 363 F.3d at 197 ("In this case, the government concedes

that it sought to convict Cruz of possession with intent to distribute a substance containing heroin on the basis of 'an aiding and abetting theory.' "); *id.* at 200 (holding that the government did not "offer proof sufficient to convince a reasonable jury beyond a reasonable doubt that Cruz was guilty of aiding and abetting the drug transaction at issue in this appeal"). Nonetheless, perhaps in response to our holding in *Cruz,* the government now argues that Rodriguez could have been convicted under either theory.

■ To establish constructive possession, the government must demonstrate that Rodriguez had "the power and intention to exercise dominion and control over" the heroin. *United States v. Payton,* 159 F.3d 49, 56 (2d Cir.1998). "[M]ere presence at the location of contraband does not establish possession." *United States v. Rios,* 856 F.2d 493, 496 (2d Cir.1988) (per curiam). Thus, in *Samaria,* we held that although an individual rode as a passenger in his own car while it contained contraband, he was not in constructive possession of stolen goods because "[t]here is no evidence that [the defendant] handled any of the boxes or directed where they were to be taken or what was to be done with them." 239 F.3d at 239. Mere proximity or presence is therefore insufficient to support a finding of constructive possession. *See United States v. Gordils,* 982 F.2d 64, 71 (2d Cir.1992).

Here, as a threshold matter and as previously discussed, the government did not present evidence to permit a rational jury to conclude that Rodriguez sat in the back of the Town Car. Rather, the evidence merely showed that just before Medina and Cruz pulled into the Boston Market parking lot three individuals had been in the car. Yet, even if the jury reasonably could have inferred that Rodriguez was in the back seat of the car, this only would establish his proximity to a box that had

heroin concealed inside of it. Similar to the situation we considered in *Samaria,* the government did not offer evidence to show that Rodriguez exercised dominion or control over the box containing the heroin, a necessary predicate to a constructive possession finding. *See Samaria,* 239 F.3d at 239. Therefore, there was insufficient evidence on which a reasonable factfinder could have found Rodriguez guilty under a constructive possession theory.

Because we decide that there was insufficient evidence to support a conviction on both the conspiracy and substantive counts, we need not address the other issues raised on appeal. *See, e.g., Glenn,* 312 F.3d at 60.

## CONCLUSION

We hold that the record evidence does not support the conclusion that a reasonable factfinder could have found Rodriguez guilty of possessing with the intent to distribute and conspiring with the intent to distribute heroin. The judgment of the district court is therefore reversed and we remand with the direction to enter a judgment of acquittal on both counts.