**UNITED STATES of America,**
**Appellee,**

v.

**Salvatore LOPRESTI, Defendant–**
**Appellant.**

**No. 08–3787–cr.**

United States Court of Appeals,
Second Circuit.

Aug. 3, 2009.

Alan S. Futerfas, New York, N.Y., Ronald P. Fischetti, New York, N.Y., for Appellant.

Sarah Coyne, Asst. U.S. Atty., Brooklyn, N.Y., for Appellee.

PRESENT: JON O. NEWMAN, ROSEMARY S. POOLER, B.D. PARKER, Circuit Judges.

### SUMMARY ORDER

Salvatore Lopresti appeals from the July 30, 2008, judgment convicting him, after a jury trial, of conspiring to deprive another of civil rights in violation of 18 U.S.C. § 241, and three counts of making a false statement in violation of 18 U.S.C. § 1001, among other counts.[1] The charges stemmed from the November 12, 2002 assault on Robert George, an inmate at the Metropolitan Detention Center ("MDC") in Brooklyn, New York. Lopresti was acquitted on a count charging the substantive offense of depriving an inmate of his civil rights. He was sentenced primarily to 51 months' imprisonment.

Lopresti's sole argument is that there was insufficient evidence to support his conviction for conspiracy to deprive inmate Robert George of his civil rights. In particular, Lopresti argues that there was insufficient evidence to show (1) that he entered George's cell with the intent to use excessive force and (2) that an agreement existed among Lopresti and other corrections officers ("COs").

Lopresti's statement of facts is not very different than the Government's. On November 13, 2002, Lopresti and Associate Warden William Ey were making rounds of the Special Housing Unit ("SHU") at the MDC. Lopresti observed George, a pretrial inmate, with a t-shirt wrapped around his dreadlocks. Lopresti ordered George to remove the t-shirt, but George refused. Lopresti left the SHU but re-turned less than 30 minutes later after having "rounded up" Lieutenant Kelly Tassio, CO Scott Rosebery, and CO Steven Peterson, the Officer in Charge of the SHU that day. Lopresti led Tassio, Rosebery, and Peterson onto the range where George's cell was located and said, "Come on, we're going in." He ordered CO Alfred Santana to open the cell door. Despite the fact that there was no emergency, George was not told to put his wrists through the door slot so that he could be handcuffed prior to the opening of the cell door, a standard procedure known to MDC staff and inmates as "cuffing up." Santana testified that he believed that Lopresti and the others were entering George's cell not only to "get the rag off his head and prove a point to him," but also "to beat him." Santana further testified that he opened the door, even though George was not "cuffed up" to "assist in any way possible" with "[w]hatever happened in the cell." Rosebery testified, "I wasn't sure exactly what was going to go down, but whatever it was, I was going to support whatever happened." Rosebery testified that he believed whatever happened was "probably not" going to be "by the book."

As the COs entered George's cell, a fight between Lopresti and George immediately ensued, with George landing the first punch. Lopresti threw at least two punches at George, including one that hit George in the face and caused him to bleed from the mouth. Lopresti and Rosebery responded by taking George to the ground hard and restraining him. At this point, Tassio, who had entered the cell after Lopresti and Rosebery, ordered Santana to activate his body alarm, signaling to prison staff that there was an emergency in the SHU. Peterson then entered George's cell

---

1. In a separate opinion filed today, we have disposed of the appeals of three co-defendants, who were indicted along with Lopresti, but charged with offenses arising in an unrelated episode. *See United States v. Perez*, No. 08–3787.

and helped Rosebery, Santana, and Tassio restrain George. As George was being restrained, Lopresti took a sheet from George's bed, fashioned it into a noose and tied it to the window bars. Lopresti then stated, "This is where he tried to hang himself." Santana testified that, after hearing those words, he "start[ed] to believe that that was going to be the story that [he] was going to have to stick to" and that "[t]hat was the story to cover up what just happened." Subsequently, after leaving the range and sending George to the East Building of the MDC to be lodged, as Rosebery recalled, in a suicide watch cell, Lopresti patted Santana on the back and told him, "[G]ood job."

Photographs of George's cell taken immediately after the beating depicted some of George's dreadlocks and a significant amount of blood on the floor. George received medical attention shortly after the assault.

### A. Legal Standards

When considering a sufficiency challenge, the Court is guided by several well-established principles: it must (1) view the evidence, whether direct or circumstantial, as a whole, not in isolation; (2) consider the evidence in the light most favorable to the government; and (3) draw all inferences and resolve all issues of credibility in the government's favor. *United States v. Matthews,* 20 F.3d 538, 548 (2d Cir.1994). This Court will not upset a guilty verdict unless "no rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt." *United States v. McDermott,* 245 F.3d 133, 137 (2d Cir.2001) (internal quotation marks omitted).

To establish a defendant's knowing participation in a conspiracy, the government "must present some evidence from which it can reasonably be inferred that the person charged with conspiracy knew of the existence of the scheme alleged in the indictment and knowingly joined and participated in it." *United States v. Rodriguez,* 392 F.3d 539, 545 (2d Cir.2004) (internal quotation marks omitted). In establishing the existence of a conspiracy, the government need not present evidence of a formal or express agreement, but instead may rely on circumstantial evidence indicating that the conspirators had a "tacit understanding" to engage in the offense. *See United States v. Amato,* 15 F.3d 230, 235 (2d Cir.1994) (citations omitted). As this Court has stated in the context of extortion, "jurors are permitted to infer, based on circumstantial evidence alone, that two or more ... defendants had a tacit understanding to use force." *United States v. Santos,* 449 F.3d 93, 103 (2d Cir.2006).

### B. Merits of the Sufficiency of the Evidence Claim

Viewed under the appropriate standards, *Matthews,* 20 F.3d at 548 (review of insufficiency claims); *Rodriguez,* 392 F.3d at 545 (review of challenges to conspiracy conviction), the evidence supports each element of the conspiracy charge. As to the intent element, a rational trier of fact could have found that Lopresti intended to enter George's cell to use excessive force. After being disobeyed by George, Lopresti rounded up a group of officers, returned to George's cell, and ordered Santana to open the cell, ignoring Bureau of Prisons procedures. As the District Court observed in denying Lopresti's Rule 29 motion, the timing of Lopresti's action, coupled with his enlistment of several other COs, created a strong inference that Lopresti was planning to use physical force to punish George for his disobedience. Santana's testimony further establishes intent. Santana stated his belief that the others were entering George's cell not only to "get the

rag off [George's] head and prove a point to him," but "also to beat him." Rosebery also surmised that what was about to happen was probably not going to be "by the book." Lopresti's failure to follow standard procedures is consistent with a preconceived plan to use physical force for punitive purposes, since there could be no cover up if George was "cuffed up." The jury could also have inferred Lopresti's intent to use excessive force from his immediate orchestration of a cover-up when he grabbed the sheet to create a noose and announced the false story that would later be reported. Also supporting this inference was Lopresti's approbation of Santana when he told him "good job." These facts together support the inference that the use of physical force was premeditated.

Lopresti's arguments go to the weight of the evidence rather than its sufficiency. His reliance upon Santana's testimony that Lopresti did not appear to be angry after George refused the order to remove the t-shirt presents an argument that was for the jury to evaluate. As to the fact that George threw the first punch, the jury could have found that George correctly surmised the COs were entering his cell to attack him and acted in self-defense against the entourage of officers entering his cell. Finally, Lopresti's acquittal on the substantive count of violating George's civil rights is not relevant to analyzing the sufficiency of the evidence on the conspiracy count. The Government is entitled to rely on evidence underlying acquitted counts to support the sufficiency of the evidence on the count of conviction. *See United States v. Mespoulede*, 597 F.2d 329, 336 n. 12 (2d Cir.1979) ("[I]n determining the sufficiency of the evidence to support a conviction on one count of an indictment, we may consider evidence on a count on which the jury acquitted.").

Lopresti fails to show that no rational trier of fact could have found beyond a reasonable doubt that a tacit agreement existed between Lopresti and at least one other person. Santana's testimony and Rosebery's testimony are also sufficient to establish the existence of such an agreement. Because Lopresti fails to meet his heavy burden in challenging the sufficiency of the evidence, his conviction is affirmed.