14-3497-cr
*United States v. Brown*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 15th day of December, two thousand and fifteen.

Present:
> BARRINGTON D. PARKER,
> PETER W. HALL,
> SUSAN L. CARNEY,
>
> *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

> *Appellee,*

> v.                                                                           No. 14-3497-cr

QUARON BROWN,

> *Defendant-Appellant.*

_____

For Defendant-Appellant:     Matthew W. Brissenden, P.C., Garden City, NY.

For Appellee:     Marcia M. Henry and Emily Berger, Assistant United States Attorneys, *for* Kelly T. Currie, Acting United States Attorney for the Eastern District of New York, Brooklyn, NY.

_____

1

Appeal from a judgment of the United States District Court for the Eastern District of New York (Weinstein, *J*.).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Following a jury trial, Defendant-Appellant Quaron Brown was convicted of conspiracy to distribute marijuana in violation of 21 U.S.C. §§ 846, 841(a)(1), and possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Brown was sentenced to, *inter alia*, concurrent terms of 60 months' imprisonment on all counts. With the assistance of counsel, Brown argues that his decision to represent himself at trial was not knowing and intelligent, and he also makes a number of arguments acting *pro se*. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

### 1. Brown's Waiver of his Right to Counsel

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. "There is, however, the correlative right to dispense with legal assistance and represent oneself." *Torres v. United States*, 140 F.3d 392, 401 (2d Cir. 1998) (citing *Faretta v. California*, 422 U.S. 806, 818–34 (1975)). "Because a defendant who decides to act *pro se* relinquishes traditional benefits associated with formal legal representation, the district court must ensure that the accused made [his] decision 'knowingly and intelligently.'" *Id*. (quoting *Faretta*, 422 U.S. at 835). "Though the defendant himself need not have the skills and experience of a lawyer to validate his choice, there must be assurance that he has been 'made aware of the dangers and disadvantages of self-representation.'" *United States v. Maldonado-Rivera*, 922 F.2d 934, 977 (2d Cir. 1990) (quoting *Faretta*, 422 U.S. at 835).

In order to confirm that the accused's decision to represent himself was made knowingly and intelligently, the court must ordinarily explore the facts and circumstances surrounding the case, including "the background, experience, and conduct of the accused." *United States v. Tompkins*, 623 F.2d 824, 827 (2d Cir. 1980) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). In particular, the court must consider "whether the defendant understood that he had a choice between proceeding *pro se* and with assigned counsel, whether the defendant understood the advantages of having one trained in the law to represent him, and whether the defendant had the capacity to make an intelligent choice." *United States v. Hurtado*, 47 F.3d 577, 583 (2d Cir. 1995) (internal quotation omitted). Further, the defendant must be informed "of the nature of the charges, the range of allowable punishments, and the risks of self-representation." *Torres*, 140 F.3d at 403. Although the requirement of a "full and calm discussion is not absolute," *Tompkins*, 623 F.3d at 828 (internal quotation and citation omitted), the court should engage in an on-the-record inquiry that "will normally entail formal questioning of the defendant." *Maldonado-Rivera*, 922 F.2d at 977. "From defendant's answers and from its own observations, the trial court must be persuaded that the waiver is a rational one, and that defendant has the mental capacity to comprehend the consequences of relinquishing a constitutional right." *United States v. Schmidt*, 105 F.3d 82, 88 (2d Cir. 1997).

In making this inquiry, we have stressed that district courts are not required to "follow a formulaic dialogue" with defendants, *United States v. Fore*, 169 F.3d 104, 107 (2d Cir. 1999), or to resort to "talismanic procedures," *Hurtado*, 47 F.3d at 583. While we have "strongly endorsed *Faretta* warnings as a factor important to the knowing and intelligent waiver of counsel, we have, at the same time, also rejected rigid waiver formulas or scripted procedures, and emphasized that 'knowing and intelligent' waivers depend on the totality of the circumstances."

3

*Dallio v. Spitzer*, 343 F.3d 553, 563 (2d Cir. 2003) (internal citations omitted). On appeal, this Court "need not analyze the district court's every word, so long as the record as a whole demonstrates that the defendant knowingly and intelligently waived [his] right to counsel." *Torres*, 140 F.3d at 401.

In this case, the record "plainly reveals that the defendant's choice was knowing and intelligent." *Maldonado-Rivera*, 922 F.2d at 977. Brown's contention that the district court did not adequately inform him of the nature of the charges, the range of allowable punishment, and the risks and benefits of proceeding without counsel is belied by the record. At numerous junctures prior to the trial, the district court informed Brown of the benefits of counsel and the dangers of self-representation. Although Brown made known to the court on the eve of trial that he did not understand the government's evidence and that he was not sure if he could adequately represent himself, the court confirmed during the final pretrial conference that Brown knew that he would be prejudiced by proceeding *pro se*, that his sentence could be increased based on the evidence presented at trial, that he had been warned repeatedly that proceeding *pro se* would be "extremely dangerous," and that, despite these admonishments, he still wished to proceed *pro se*. JA 133. Brown repeatedly confirmed to the court, moreover, that he understood the consequences of proceeding *pro se*, including in his assurances to the court in response to the government's concern that his waiver was not "unequivocal." JA 403.

Prior to trial, Brown was apprised of the evidence that would be presented against him, including recorded conversations and direct testimony establishing his role as a major player in the drug conspiracy. Brown also understood, based on the government's representations to the court, that he potentially faced a mandatory minimum ten-year sentence if he was convicted of all charges at trial and a five-year mandatory minimum sentence if he pleaded guilty. In

4

addition, the district court had the opportunity to observe Brown and assess his knowledge and comprehension through Brown's *pro se* filings with the court and during several status hearings prior to trial. Ultimately, the court concluded that, based on the totality of the circumstances, Brown was "highly intelligent," JA 87, and "competent within the limits of the average layman to exercise his defense," JA 128. The court's conclusion is fully supported by the record.

## 2. Brown's remaining claims

Brown makes a number of *pro se* claims on appeal. First, Brown argues that his rights under the Double Jeopardy Clause of the Fifth Amendment, U.S. Const. amend. V, cl. 2, were violated because the grand jury twice superseded the original indictment. This argument is unavailing because jeopardy does not attach until the trial "jury is empaneled and sworn." *United States v. Razmilovic*, 507 F.3d 130, 136 (2d Cir. 2007).

Second, Brown claims that venue was not proper in the Eastern District of New York because there was no evidence that Brown committed a crime in New York. Relatedly, Brown contends that the "interstate commerce" nexus required to establish federal subject matter jurisdiction was absent and that the government "manufactured" federal jurisdiction by instructing one of the cooperating witnesses to travel across state lines. Appellant's Br. at 7. Brown's arguments are belied by the evidence presented at trial, which showed that Brown participated in a large drug conspiracy that spanned multiple states, including New York. Further, there was evidence directly tying Brown's drug activities to the Eastern District of New York, including witness testimony that Brown delivered drug proceeds to a co-conspirator in Queens, New York.

5

Finally, we address Brown's challenges to the sufficiency of the evidence to support his conviction.[*] "[A] defendant challenging the sufficiency of the evidence 'bears a heavy burden.'" *United States v. Aguiar*, 737 F.3d 251, 264 (2d Cir. 2013) (quoting *United States v. Hawkins*, 547 F.3d 66, 70 (2d Cir. 2008)). "On such a challenge, we view the evidence in the light most favorable to the government, drawing all inferences in the government's favor and deferring to the jury's assessments of the witnesses' credibility." *Id*. "We must uphold the jury's verdict as long as '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

To convict a defendant of conspiracy, "the government must show that two or more persons entered into a joint enterprise for an unlawful purpose, with awareness of its general nature and extent." *United States v. Torres*, 604 F.3d 58, 65 (2d Cir. 2010). "Moreover, a particular defendant's membership in a conspiracy requires proof of [his] purposeful behavior aimed at furthering the goals of the conspiracy." *United States v. Diaz*, 176 F.3d 52, 97 (2d Cir. 1999) (internal quotation omitted). To prove possession with the intent to distribute, the government was required to show that Brown knowingly and intentionally possessed marijuana and did so with the intent to distribute it. *United States v. Rodriguez*, 392 F.3d 539, 545 (2d Cir. 2004). Because both the conspiracy and substantive charges are specific intent crimes, the

---

[*] In addition, Brown makes several other unavailing arguments. He contends that the court failed to inform him of the import of 28 U.S.C. § 1345 and 28 U.S.C. § 1582, but those statutes are not applicable to the criminal proceedings in this case. Further, Brown contends that his constitutional rights were violated by a DEA agent's testimony regarding "unwarranted phone conversations" and "fabricated summarized Fed Ex records," as well as the government's presentation of "false evidence" at trial, Appellant's Br. at 9, 10, but he points to no evidence to support these allegations. Finally, Brown contends that the court erred by failing to give a jury instruction on the "conscious avoidance" doctrine, but that doctrine was not relevant to the charges against him. *Id*. at 10.

6

government was required to prove that Brown "knowingly and intentionally participated in the drug deal" alleged in the indictment. *Id.* In this regard, the government "need not prove that the defendant knew the specific drug at issue, but only that he was dealing with some controlled substance." *United States v. Davis*, 690 F.3d 127, 131 (2d Cir. 2012). Further, "[b]oth the existence of a conspiracy and a given defendant's participation in it with the requisite knowledge and criminal intent may be established through circumstantial evidence." *United States v. Stewart*, 485 F.3d 666, 671 (2d Cir. 2007).

Here, the evidence was plainly sufficient to establish both the existence of a drug conspiracy and Brown's participation in the conspiracy. The government's evidence, including the testimony of cooperating witnesses and government agents, Brown's recorded conversations, phone records, and Federal Express records, established that Brown had a major role in funding and planning the conspiracy and that he directly distributed a large amount of marijuana. Brown claims that the evidence against him was fabricated, but it was for the jury, not this Court, to determine the credibility of the witnesses and the weight of the evidence. *Aguiar*, 737 F.3d at 264.

For the reasons stated, the judgment of the district court is AFFIRMED.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK