20-3996
*United States v. Lopez*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 27th day of January, two thousand twenty-one.

PRESENT:
> JOHN M. WALKER, JR.,
> RICHARD J. SULLIVAN,
> EUNICE C. LEE,
> > *Circuit Judges*,

_____

UNITED STATES,

> *Appellee*,

> v.                                                            No. 20-3996

FRANCISCO LOPEZ,

> *Defendant-Appellant*.*

_____

---

\* The Clerk of Court is respectfully directed to amend the official caption as set forth above.

For Defendant-Appellant:     ROBERT A. CULP, Law Office of Robert A. Culp, Garrison, NY.

For Respondent-Appellee:     NATHANIEL J. GENTILE (Marc H. Silverman, *on the brief*), Assistant United States Attorneys, *for* Leonard C. Boyle, Acting United States Attorney for the District of Connecticut.

Appeal from the United States District Court for the District of Connecticut (Janet C. Hall, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Francisco Lopez appeals his conviction following a jury trial for conspiracy to distribute 100 grams or more of heroin in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(i) and 846, and use of a telephone to facilitate a drug trafficking felony in violation of 21 U.S.C. §§ 841(a)(1) and 843(b). We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

Lopez challenges the sufficiency of the evidence presented at trial. We review challenges to the sufficiency of trial evidence de novo. *United States v.*

*Lyle*, 919 F.3d 716, 737 (2d Cir. 2019).  Even on de novo review, however, "defendants face a heavy burden" because we must sustain the jury's verdict if, "credit[ing] every inference that could have been drawn in the government's favor" and "viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *United States v. Ho*, 984 F.3d 191, 199 (2d Cir. 2020) (internal quotation marks omitted).

Lopez argues that the government's case – which principally relied on intercepted phone calls and text messages and not physical evidence or direct testimony – was insufficient to prove that Lopez conspired to distribute heroin or that Lopez used a telephone to further that conspiracy.   We disagree.

"The gist of conspiracy is, of course, agreement."   *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1191 (2d Cir. 1989).  To prove membership in a conspiracy, the government must show "that the person charged with conspiracy knew of the existence of the scheme alleged in the indictment and knowingly joined and participated in it."   *United States v. Snow*, 462 F.3d 55, 68 (2d Cir. 2006) (internal quotation marks omitted).   Once the government has proven that a conspiracy exists, "the evidence sufficient to link another defendant to [the

conspiracy] need not be overwhelming." *United States v. Nusraty*, 867 F.2d 759, 762 (2d Cir. 1989) (internal quotation marks omitted).

At trial, the government's cooperating witness, Lliver Abreu-Baez, testified that from January 2018 through December 2018 he provided approximately 8–10 kilograms of heroin to Larry Hall on credit. Hall stored the heroin in a garage next to his house, and would then sell the heroin to his own customers. One of those customers was Pedro Santos, who in turn sold heroin to Lopez. To establish the existence of the conspiracy and Lopez's membership in it, the government introduced a series of intercepted phone calls and text messages between Hall and Santos and between Santos and Lopez in which the men discussed Lopez's plans to buy heroin from Hall. Because many of the communications were conducted in code, the government called an expert witness to testify about the heroin trade and commonly used expressions employed by heroin traffickers. *See United States v. Dukagjini*, 326 F.3d 45, 52 (2d Cir. 2003) ("[W]e have consistently upheld the use of expert testimony to explain both the operations of drug dealers and the meaning of coded conversations about drugs.").

Viewing that evidence in the light most favorable to the government, as we must, we have no hesitation in finding that there was sufficient proof for the jury

to conclude that Lopez entered into an agreement to buy distribution-level quantities of heroin from Hall and Santos. Although Lopez is correct that none of the calls in which he was a participant ever expressly referenced heroin, his use of the terms "buck fifty," "dollar-fifty," and "one-and-a-half" were consistent with the expert's testimony about slang used by drug dealers to describe gram quantities of narcotics, and were followed by more explicit references to 150 and 190, which Santos described as "forty cent more" than the "one-and-a-half" that Lopez had ordered. Appellant App'x at 365. Lopez's request for "a dollar-fifty" from Santos was followed by a call from Santos to Hall, the supplier, in which Santos asked for "[o]ne hundred and fifty" and reminded Hall that the "house number is . . . 6-2 now." Appellant App'x at 453. This evidence, combined with Abreu-Baez's testimony that he supplied Hall with heroin and the expert's testimony that a gram of heroin typically sold for approximately $60 per gram, provided ample basis for the jury to conclude that Lopez was negotiating heroin sales with Santos and Hall.

Lopez alternatively argues that even if the evidence was sufficient to show that he agreed to purchase heroin from Hall, his conduct falls under the "buyer-seller exception" to narcotics-conspiracy liability. To be sure, we have long

recognized an exception to narcotics-conspiracy liability for "the mere purchase and sale of drugs." *United States v. Brock*, 789 F.3d 60, 63 (2d Cir. 2015). Instead, "[t]o sustain a conspiracy conviction, the government must present some evidence from which it can reasonably be inferred that the person charged with conspiracy knew of the existence of the scheme alleged in the indictment and knowingly joined and participated in it." *United States v. Rodriguez*, 392 F.3d 539, 546 (2d Cir. 2004) (internal quotation marks omitted). Here, the evidence introduced at trial amply demonstrated that Lopez knew of the scheme to distribute heroin and joined in it. The intercepted phone calls and texts revealed that Lopez engaged in multiple transactions for wholesale quantities of heroin with Santos and Hall, that he was given priority over other, lesser-known buyers, and that he was permitted to purchase heroin on credit. After Lopez and Santos were stopped by police officers, each contacted Hall to let him know about the stop and urge him to "cleanup shop" and "be safe." Based on the evidence introduced at trial, we find that there was sufficient evidence for the jury to conclude that Lopez knowingly joined in the conspiracy and that his conduct did not fall within the buyer-seller exception. *See United States v. Rojas*, 617 F.3d 669, 675 (2d Cir. 2010) (considering factors such as whether there was mutual trust between the buyer

and the seller, whether the buyer and seller had a long-standing relationship, and whether the buyer purchased redistribution quantities of illegal drugs when determining the applicability of the buyer-seller exception).

Finally, Lopez argues that the government failed to show that he joined in the particular conspiracy charged in the indictment – which included twenty-nine individuals – as opposed to a smaller conspiracy limited to Lopez, Santos, and Hall. But the law is clear that "[e]ven where there are multiple groups within an alleged conspiracy, a single conspiracy exists where the groups share a common goal and depend upon and assist each other, and we can reasonably infer that each actor was aware of his part in a larger organization where others performed similar roles." *United States v. Chavez*, 549 F.3d 119, 126 (2d Cir. 2008) (internal quotation marks omitted) *abrogated on other grounds by Dean v. United States*, 137 S. Ct. 1170 (2017). The defendant need not know "all of the details of the conspiracy," nor the "identities of all of the other conspirators," so long as they agreed on the essential nature of the plan. *United States v. Huezo*, 546 F.3d 174, 180 (2d Cir. 2008). From the evidence introduced at trial, it is clear that Lopez agreed on the essential nature of the plan (trafficking heroin) and that he knew he was part of a collective venture.

We have considered Lopez's remaining arguments and find them to be without merit.   Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court